UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in May 7, 2019

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| v. | : | GRAND JURY ORIGINAL |
| DAVID BRIAN PATE, and<br>JOSE LUIS FUNG HOU, | : | VIOLATIONS:<br>21 U.S.C. § 846<br>(Conspiracy to Distribute Controlled Substances) |
| Defendants. | : | 21 U.S.C. § 841(a)(1) and 841(b)(1)(C)<br>(Unlawful Distribution of Controlled Substances)<br>21 U.S.C. §§ 959 and 963<br>(Conspiracy to Import Controlled Substances from a Foreign Country)<br>18 U.S.C. § 1956(h)<br>(Conspiracy to Commit Money Laundering)<br>18 U.S.C. § 1956(a)(2)(A)<br>(Laundering of Monetary Instruments) |
| | : | FORFEITURE:<br>21 U.S.C. § 853 and 18 U.S.C. § 982 |

## INDICTMENT

The Grand Jury charges that:

At times material to this Indictment:

1. **DAVID BRIAN PATE** was a United States citizen, who subsequently acquired dual Costa Rican citizenship, and was a resident of Costa Rica.

2. **JOSE LUIS FUNG HOU** was a Costa Rican citizen and a resident of Costa Rica.

3. Co-Conspirator A, whose identity is known to the Grand Jury, was a United States citizen, who resided in the United States, and acted as a re-shipper of narcotics.

4. Co-Conspirator B, whose identity is known to the Grand Jury, was a United States citizen, who resided in the United States, and acted as a re-shipper of narcotics.

5. Co-Conspirator C, whose identity is known to the Grand Jury, was a United States citizen, who resided in the United States, and acted as a re-shipper of narcotics.

## DEFINITION OF TERMS

### Narcotics

6. OxyContin was a specific brand name for the Schedule II controlled substance oxycodone, an opioid.

7. Morphine was a Schedule II controlled substance.

8. Xanax was a specific brand name for the Schedule IV controlled substance alprazolam.

### Bitcoin

9. Bitcoin ("BTC") was one type of virtual currency that was circulated over the Internet. BTC was not issued by any government, bank, or company, but rather was controlled through computer software. Generally, BTC was sent and received using a BTC "address," which was like a bank account number and was represented by a case-sensitive string of numbers and letters. Each BTC address was controlled through the use of a unique private key, a cryptographic equivalent of a password. Users could operate multiple BTC addresses at any given time, with the possibility of using a unique BTC address for every transaction. A typical user purchased BTC from a virtual currency exchange, which was a business that allowed customers to trade virtual currencies for conventional money (*e.g.*, U.S. dollars, euros). Little to no personally identifiable information about the sender or recipient was transmitted in a BTC transaction itself. However,

virtual currency exchanges were required by U.S. law to collect identifying information of their customers and verify their clients' identities.

10. To send BTC to another address, the sender transmitted a transaction announcement, cryptographically signed with the sender's private key, across the BTC network. Once the sender's transaction announcement was verified, the transaction was added to the blockchain. The blockchain was a decentralized, public ledger that logged every BTC transaction. In some instances, blockchain analysis could reveal whether multiple BTC addresses were controlled by the same individual or entity.

### The Tor Network

11. Tor was a computer network which anonymized Internet activity by routing a user's communications through a global network of relay computers (or proxies), thus effectively masking the Internet Protocol ("IP") address of the user. An IP address was a unique numeric address (used by computers on the Internet) that is assigned to properly direct internet traffic. A publicly-visible IP address could allow for the identification of the user and his or her location. To access the Tor network, a user had to install freely-available Tor software. Use of the Tor software routed a user's communications around a distributed network of relay computers run by volunteers all around the world, thereby masking the user's actual IP address (traditionally used to identify a user).

12. Within the Tor network, entire websites could be set up as "hidden services," which masked the IP address for the site's web server. Hidden services were accessed at Tor-based web addresses comprised of a series of algorithm-generated characters, such as "asdlk8fs9dflku7f,"

followed by the suffix ".onion." A user could only reach these "hidden services" if the user was using the Tor software and operating in the Tor network.

### Darknet Markets

13. Darknet markets were commercial websites located within Tor's hidden services that could only be accessed using Tor. Darknet markets functioned primarily as black markets, selling or brokering transactions involving drugs, unlicensed pharmaceuticals, cybercriminal tools, weapons, counterfeit currency, stolen credit card details, forged documents, and other illicit goods. BTC was the most common method of payment for products or services within darknet markets.

14. Silk Road Market ("Silk Road") and AlphaBay Market ("AlphaBay") were, at various times, popular darknet markets widely used by individuals in the United States and elsewhere to buy and sell illegal narcotics.

### COUNT ONE
### (Drug Distribution Conspiracy)
21 U.S.C. § 846

15. Paragraphs 1 through 14 are incorporated herein.

16. Beginning on or about February 27, 2013, and continuing through on or about May 6, 2018, within the District of Columbia and elsewhere, the defendants, **DAVID BRIAN PATE** and **JOSE LUIS FUNG HOU**, did knowingly conspire, with others known and unknown to the Grand Jury, including Co-Conspirators A, B, and C, to knowingly and intentionally distribute a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, morphine, a Schedule II controlled substance, and alprazolam, a Schedule IV controlled substance.

## OBJECTS OF THE CONSPIRACY

17. The objects of the conspiracy were, in substance, as follows:

   a. to traffic narcotics;

   b. to use cryptocurrency and the darknet to conceal the co-conspirators' illicit activities; and

   c. to enrich the co-conspirators from the trafficking of narcotics.

## MANNER AND MEANS

18. **DAVID BRIAN PATE** acquired OxyContin (oxycodone) and other narcotics from suppliers in Costa Rica, including primarily from pharmacists such as **JOSE LUIS FUNG HOU**.

19. **DAVID BRIAN PATE** sold narcotics, including OxyContin, Morphine, and Xanex (alprazolam), on numerous darknet markets, including Silk Road and AlphaBay, in exchange for BTC.

20. **DAVID BRIAN PATE** utilized the online monikers "buyersclub," "senorpate," "davidpate," and "expurdue" on darknet markets, online forums, and BTC exchanges.

21. For example, between in or about December 2012 and in or about October 2013, **DAVID BRIAN PATE** advertised and sold 20 milligram (mg) and 40 mg pills of OxyContin on Silk Road using the moniker "expurdue." **DAVID BRIAN PATE** advertised the pills as originating from a pharmacy in Costa Rica.

22. **DAVID BRIAN PATE**'s darknet sales were conducted as follows:

   a. **DAVID BRIAN PATE** sent bulk shipments of narcotics in pill form, often concealed in tourist souvenirs such as maracas, to co-conspirator re-shippers (such as Co-Conspirators A, B, and C) in the United States;

5

  b. **DAVID BRIAN PATE** would send the co-conspirator re-shippers a list of customer orders in the United States, which included the customer's name, the customer's shipping address, and the quantity of pills they purchased;

  c. The co-conspirator re-shippers then created smaller packages of pills;

  d. The co-conspirator re-shippers mailed the pills to the customer; and

  e. Once the shipments were received by the customer, the darknet market would release funds in BTC, which were held in escrow until the transaction was completed, into **DAVID BRIAN PATE**'s account on the darknet market.

23. The co-conspirators would launder payments in the form of BTC and international wire transfers.

24. Ultimately, between in or about December 2012 and in or about July 2020, following payments from darknet markets were received at BTC addresses controlled by **DAVID BRIAN PATE**:

| Darknet Market | BTC Received |
|---|---|
| Agora | 62.251352 |
| Middle Earth | 191.675684 |
| Silk Road | 22,368.679000 |
| AlphaBay | 1,077.176277 |
| Nucleus | 26.692179 |
| Abraxas | 173.020268 |
| Dream | 3.787112 |
| Total | 23,903.281872 |

25. **DAVID BRIAN PATE** used encrypted messaging services to communicate with co-conspirator re-shippers regarding the identities, location information, and order details of customers.

## OVERT ACTS

26. The defendants and co-conspirators, known and unknown to the Grand Jury, committed, and caused to be committed, the following overt acts, amongst others, in furtherance of the conspiracy.

### 2015 Bulk Purchases and Wires

27. On or about September 9, 2015, **DAVID BRIAN PATE** caused a wire transfer from inside the United States to **JOSE LUIS FUNG HOU** outside of the United States totaling $9,000.

28. On or about September 16, 2015, **DAVID BRIAN PATE** caused a wire transfer from inside the United States to **JOSE LUIS FUNG HOU** outside of the United States totaling $9,000.

29. On or about October 30, 2015, **DAVID BRIAN PATE** wrote to **JOSE LUIS FUNG HOU** in an email, "i [sic] know that you are leaving soon to go on vacation and was wanting to see what you could do before leaving. let me know and i will see what kind of money that i can come up with and have wired to you. thanks, dave."

30. On or about October 30, 2015, **JOSE LUIS FUNG HOU** replied in an email, "Hey David. I can get you the same amount ready for next friday before I leave. Just like last time: 48 of the 40s and 20 of the 20s," a reference to doses of OxyContin in milligrams.

31. On or about October 30, 2015, **DAVID BRIAN PATE** responded in an email, "will you get the prescriptions?? also the 270 30mg morphine for the 3 prescriptions that i had? if so let me know total price, i am trying to make plan to limon [Costa Rica] this coming week to pick up my lexus. thanks, dave."

32. On or about October 30, 2015, **JOSE LUIS FUNG HOU** replied in an email, "Right!! the morphines too! I will take care of the papelwork [sic] this weekend for the 40s and 20s."

33. On or about October 30, 2015, **DAVID BRIAN PATE** replied in an email, "try to let me asap the total price, so that i have time to get the wire out to yoou [sic]."

34. On or about October 30, 2015, **JOSE LUIS FUNG HOU** asked in an email, "You think you can wire [$]18,000 or so?"

35. On or about November 1, 2015, **DAVID BRIAN PATE** replied in an email, "FOR SURE.. WILL SEND IN WIRE INFO IN A BIT."

36. On or about November 28, 2015, **JOSE LUIS FUNG HOU** sent an email to **DAVID BRIAN PATE** with the subject line of "This is my new email, [redacted] from the Oxys," in which **JOSE LUIS FUNG HOU** stated, "I've got the 2 transfers… I'm getting recetas right now, but I may need 6 from you dr. Please tell him to do 60 of the 40s for each one."

37. On or about November 28, 2015, **DAVID BRIAN PATE** responded to **JOSE LUIS FUNG HOU** in an email asking if the "meds" could be ready by Sunday.

38. On or about November 28, 2015, **JOSE LUIS FUNG HOU** responded to **DAVID BRIAN PATE** in an email to make sure that **DAVID BRIAN PATE** had six more "recetas," each for 60 tablets of "40s."

39. On or about November 28, 2015, **JOSE LUIS FUNG HOU** emailed PATE, "Great! I've got 44 of the 40mg and 26 of the 20mg."

40. On or about November 28, 2015, **DAVID BRIAN PATE** told **JOSE LUIS FUNG HOU** in an email, "Can you please send me a break down of the cost? Already picked up

8

prescriptions.. Do you know of a good place to buy more while I am up here. I have 5 40mg and 4 20mg that I need to fill".

### Sales via Co-Conspirator A

41. In or about early June 2015, **DAVID BRIAN PATE** sent a package of approximately 400 pills of OxyContin to Co-Conspirator A.

42. In or about early June 2015, per **DAVID BRIAN PATE**'s instructions, Co-Conspirator A caused a wire from inside the United States to **DAVID BRIAN PATE** outside of the United States totaling $6,700, with said funds derived from the sale of the approximately 400 pills of OxyContin.

43. In or about February 2016, **DAVID BRIAN PATE** caused two packages to be sent to Co-Conspirator A in the United States, which contained in total approximately 10,000 OxyContin and Xanax pills, which were concealed inside maracas.

44. In or about March 2016, **DAVID BRIAN PATE** caused a package to be sent to Co-Conspirator A in the United States, which package contained approximately 8.52 pounds of 2 mg pills of Xanax – and which package was seized by law enforcement.

45. In or about March 2016, **DAVID BRIAN PATE** caused a package to be sent to Co-Conspirator A in the United States, which package was seized by law enforcement and contained the following approximate amounts of pills, hidden within maracas:

    a. 69.8 grams of purple 30 mg morphine pills;

    b. 123.9 grams of pink 20 mg OxyContin pills;

    c. 105.6 grams of yellow 40 mg OxyContin pills; and

    d. 109.5 grams of yellow 40 mg OxyContin pills.

### Sales via Co-Conspirator B

46. In or about September 2016, **DAVID BRIAN PATE**, using the moniker "buyersclub," advertised on AlphaBay the sale of 20mg and 40mg OxyContin pills, which he described as "old formula"—referring to the original OxyContin formula that did not contain tamper-resistant features such as a crush-proof feature that prevented a user from inhaling or injecting the pills after pulverizing them.

47. On or about November 2, 2016, **DAVID BRIAN PATE**, using the moniker "buyersclub," accepted an order on AlphaBay for ten 40 mg OxyContin tablets, sold at $22.00 worth of BTC per tablet, which order was placed from the District of Columbia by an undercover Drug Enforcement Administration ("DEA") task-force officer ("UC").

48. On or about November 2, 2016, **DAVID BRIAN PATE** received a private AlphaBay message from the DEA UC, which included the receipt address in Washington, D.C. for the narcotics.

49. On or about November 8, 2016, **DAVID BRIAN PATE** sent the DEA UC a private AlphaBay message containing a tracking number for the package.

50. On or about November 8, 2016, Co-Conspirator B, acting as **DAVID BRIAN PATE**'s re-shipper, caused the DEA UC to receive an envelope in Washington, D.C., containing a small plastic bag with 10 pills stamped with "EX" and "40," which laboratory analysis confirmed tested positive for the presence of oxycodone.

51. On or about December 12, 2016, Co-Conspirator B, using the moniker "BC_USA," accepted an order on AlphaBay for ten 40 mg OxyContin tablets, sold at $32.00 worth of BTC per tablet, which order was placed by the same DEA UC.

52. On or about December 19, 2016, Co-Conspirator B, acting as **DAVID BRIAN PATE**'s re-shipper, caused the DEA UC to receive a plastic bag with 10 pills stamped with "EX" and "40," which laboratory analysis confirmed tested positive for the presence of oxycodone.

53. On or about January 19, 2017, **DAVID BRIAN PATE** accepted an order on AlphaBay for ten 40 mg OxyContin tablets, sold at $32.00 worth of BTC per tablet, which order was placed from the District of Columbia by another DEA UC.

54. On or about January 30, 2017, Co-Conspirator B, acting as **DAVID BRIAN PATE's** re-shipper, caused the DEA UC to receive in Washington, D.C. a plastic bag with 11 pills stamped with "EX" and "40," which laboratory analysis confirmed tested positive for the presence of oxycodone.

### Seized August 2017 Shipment

55. On or about August 21, 2017, **DAVID BRIAN PATE** caused a package of narcotics to be shipped to the United States, which package contained approximately 2,214 oxycodone pills and approximately 358 morphine pills hidden inside maracas – and which package was seized by Costa Rican law enforcement.

### Seized February 2018 Shipment

56. On or about February 14, 2018, **DAVID BRIAN PATE** caused a package of narcotics to be shipped to Co-Conspirator C in the United States, which package contained approximately 717 pills, primarily OxyContin and morphine, hidden inside maracas – and which package was seized by Costa Rican law enforcement.

Seized May 2020 Drug Shipment

57. In or about May 2020, **DAVID BRIAN PATE** caused a shipment of narcotics to be shipped to the United States, which package was seized by Costa Rican law enforcement containing 40 mg OxyContin pills packaged hidden inside maracas.

(**Conspiracy to Distribute Controlled Substances**, in violation of Title 21, United States Code, Section 846)

## COUNT TWO
### (Distribution of a Controlled Substance)
21 U.S.C. § 841(a)(1)

58. Paragraphs 1 through 14 and 18 through 57 are incorporated here.

59. On or about November 8, 2016, within the District of Columbia and elsewhere, the defendant, **DAVID BRIAN PATE**, did knowingly and intentionally distribute a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance.

(**Unlawful Distribution of Controlled Substances**, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C))

## COUNT THREE
### (Distribution of a Controlled Substance)
21 U.S.C. § 841(a)(1)

60. Paragraphs 1 through 14 and 18 through 57 are incorporated here.

61. On or about January 30, 2017, within the District of Columbia and elsewhere, the defendant, **DAVID BRIAN PATE**, did knowingly and intentionally distribute a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance.

(**Unlawful Distribution of Controlled Substances**, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C))

### COUNT FOUR
### (Conspiracy to Import Controlled Substances)
21 U.S.C. § 963

62. Paragraphs 1 through 14 and 18 through 57 are incorporated here.

63. Beginning in or about March 2016, continuing through in or about May 2020, within the District of Columbia and elsewhere, the defendants, **DAVID BRIAN PATE** and **JOSE LUIS FUNG HOU**, did knowingly conspire with individuals known and unknown to the Grand Jury to import into the United States from any place outside thereof, that is Costa Rica, a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, morphine, a Schedule II controlled substance, and alprazolam, a Schedule IV controlled substance.

(**Conspiracy to Import Controlled Substances from a Foreign Country**, in violation of Title 21, United States Code, Sections 959 and 963)

### COUNT FIVE
### (Money Laundering Conspiracy)
18 U.S.C. § 1956(h)

64. Paragraphs 1 through 14 and 18 through 57 are incorporated here.

65. Beginning on or about February 27, 2013, and continuing through in or about May 2020, within the District of Columbia and elsewhere, the defendants, **DAVID BRIAN PATE** and **JOSE LUIS FUNG HOU**, did knowingly conspire with others known and unknown to the Grand Jury to transport, transmit, and transfer, and knowingly cause the transport, transmission, and transfer, of monetary instruments and funds from a place in the United States to a place outside

the United States, that is Costa Rica, and from a place outside the United States, that is Costa Rica, to a place in the United States:

    a.    with the intent to promote the carrying on of a specified unlawful activity, that is, buying, selling, and otherwise dealing in a controlled substance;

    b.    knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of a specified unlawful activity, that is, buying, selling, and otherwise dealing in a controlled substance, and knowing such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity.

(**Conspiracy to Launder Monetary Instruments**, in violation of Title 18, United States Code, Section 1956(h))

## COUNTS SIX AND SEVEN
**(Laundering of Monetary Instruments)**
18 U.S.C. § 1956(a)(2)(A)

66.    Paragraphs 1 through 14 and 18 through 57 are incorporated here.

67.    On or about the dates described, within the District of Columbia and elsewhere, the defendant, **DAVID BRIAN PATE**, caused the transmission and transfer of a monetary instrument and funds, in the amounts described below, from a place in the United States, that is, Washington, D.C., to a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is, buying, selling, and otherwise dealing in a controlled substance.

| Count | On or about Date of Transfer | Amount |
|---|---|---|
| SIX | November 2, 2016 | $220 worth of BTC at time of transaction |
| SEVEN | January 19, 2017 | $320 worth of BTC at time of transaction |

(**Laundering of Monetary Instruments,** in violation of Title 18, United States Code, Section 1956(a)(2)(A))

## FORFEITURE ALLEGATION

1. Upon conviction of the offenses alleged in Counts One through Four of this Indictment, the defendants shall forfeit to the United States pursuant to 21 U.S.C. § 853, any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violations and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations.

2. Upon conviction of the offenses alleged in Counts Five through Seven of this Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in these offenses, or any property traceable to such property pursuant to 18 U.S.C. § 982(a)(1). The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, involved in these offenses, and any property traceable to such property.

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

the defendants shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

  (**Criminal Forfeiture**, pursuant to Title 18, United States Code, Section 982(a)(1), Title 21, United States Code, Section 853(a) and (p))

             A TRUE BILL:

             FOREPERSON.

*Michael R. Sherwin* [signature]
Attorney of the United States in
and for the District of Columbia.